*Eleventh Judicial District.*

## In the Common Pleas of Luzerne County.

### JOSEPH W. GRIFFIN *v.* JOSEPH FELLOWS *et al.*

1. Under the confirming acts of assembly of 1826, 1831, and 1835, the relation of landlord and tenant, in case of a lease by the public committee of the township of Providence, in Luzerne county, made in 1796, claiming the Connecticut title, exists with the same effect as in leases held under title derived from a Pennsylvania claimant.

2. In the *premises* of a lease for the term of nine hundred and ninety-nine years, the lessor granted, demised, set and to farm let, the land described. The *habendum* clause was as follows: "To have and to hold the above granted and demised premises, with every privilege, right, member and appurtenances whatsoever, to the same premises belonging, or in anywise appertaining, whether ways, waters, water courses, *mines and minerals*, of whatever description," &c. *Held*, that although there was no opened mine at the time of the demise, the lessee had the right to dig for minerals, and to mine and take them away.

3. When a lease permits the opening of mines, it is not a cause of forfeiture for the tenant to work them even to exhaustion.

4. The term "minerals," embraces everything not of the mere surface, which is used for agricultural purposes. Granite, as well as fossils are comprehended within it.

5. An ancient grant is to be construed by evidence of the manner in which the thing granted has always been possessed and used, for so the parties must be supposed to have intended.

6. A tenant for years does not incur a forfeiture of his term by entering into articles of agreement for the sale of the demised premises in fee, nor by an absolute conveyance of the fee by deed. By such agreement or deed the estate of the reversioner is not divested. No other effect is given to such instruments than that of passing such interest only as the lessee might lawfully part with.

Opinion by

ELWELL, P. J.   The plaintiff seeks to recover, in this action, the possession of fifty acres of land, situate in that part of the city of Scranton which was formerly the borough of Hyde Park, in the certified township of Providence. His title was not much questioned upon the argument. For the purpose of this case, under the view which I take of the rights of the defendants as lessees under the legal title, it may be conceded that the title rested in the public committee of the township of Providence, by the certificate dated in 1807, granted by the commissioners appointed under the act offering compensation to Pennsylvania claimants, of certain lands within the seventeen townships of Luzerne county, passed on the 4th April, 1799, and its supplement, together with the patent from the commonwealth dated in 1812, became vested in the plaintiff by the deed from the majority of the trustees of said township, on the 13th day of March, 1865.

Both parties in this controversy trace their rights back to what is called the "Connecticut title." The certificate granted to the public committee, is of itself, conclusive evidence that they, or those from whom they derived the title, were actual settlers prior to the decree of Trenton, in 1782.

On the 8th September, 1796, the then public committee of the township of Providence, executed and delivered to Joseph Fellows, a lease of the land in question, for the term of nine hundred and ninety-nine years, for the yearly rent of four pounds and four shillings, and the taxes. The plaintiff now contends that this lease was, at the time of making it, abso-

lutely void, and conferred no estate upon the lessee. And we are cited to the act of the 11th April, 1795, which forbids the taking of possession of any lands in Luzerne county under color of title not derived from the commonwealth, or the late proprietors. But neither this act nor that of 6th April, 1802, applied to lands within the seventeen townships.

It is unnecessary to refer particularly to the several acts of assembly in reference to this subject. In 1814, (see 6 Laws Penna. 122,) the legislature repealed the whole list of intrusion laws, acts to protect territorial limits, &c., and in 1813, so far recognized *some* rights of Connecticut claimants, as to respect the law which suspended the act of limitation where lands were claimed under Connecticut. Prior to this time, it was decided by the supreme court in Carkhuff *v.* Anderson, 3 Binn. 4, that the interest of a Connecticut settler in land within the seventeen townships who was entitled by the act of 1799 to obtain a patent, was subject to the lien of a judgment. This case in effect decides what was expressly held by Judge Scott in Barhey *v.* Sutton, 2 Watts 3, to wit: That after acquired title of a Connecticut settler by a certificate under the act, enured to the advantage of a purchaser, where the vendor had conveyed or executed a contract before acquiring the legal title.

On the 8th day of April, 1826, a law was passed enacting " that the relation of landlord and tenant shall exist, and be held as fully and effctually between *Connecticut* settlers, and between Connecticut settlers and Pennsylvania claimants, as between other citizens of the commonwealth on the trial of any cause now pending or hereafter to be brought within the commonwealth, any law or usage to the contrary notwithstanding." This act was held in Setterlee *v.* Matthewson, 16 S. & R. 169, to be constitutional, and, upon a writ of error to the supreme court of the United States, the decision was affirmed.

But still more to the purpose, and directly in the line of the plaintiff's title, and without which he must have failed for want of authority in the committee or trustees to make a conveyance, is the act of 2d April, 1831, Pamphlet L. 367, and the supplement thereto, passed April 14, 1835, by which *all leases* before made by the committee of the proprietors of Providence township, were *confirmed* and declared valid.

The objection to the lease on this ground is an ungracious one, coming, as it does, from a landlord who holds under or by virtue of the *same* act of assembly which confirmed the tenant's title, and who is presumed to have knowledge of the fact, that for seventy years prior to his purchase, the rent reserved had been paid to, and received by, his predecessors in the title. If there were no confirming act of assembly there would arise, after this lapse of time, a presumption of confirmation by the lessor, by the acceptance of rent and the written receipt therefor.

It is contended *secondly*, by the counsel for the plaintiff, that the tenant has forfeited his term by having conveyed a greater estate in the land than he possessed.

The facts as stated do not show any *conveyance* by the tenant. He entered into *articles of agreement* for the sale of a number of lots in August, 1865, and covenanted with the purchaser, that on the full payment of the purchase money (the last instalment of which would fall due in 1875), he would execute and deliver to him a good and sufficient deed of the land, sold in fee simple, with covenant of warranty.

The law of England, upon the subject of forfeiture, the common law does not go the length of declaring that even a *conveyance* by a tenant will in all cases work a forfeiture. In order to have this effect, it must be such as displaces or divests the estate of the reversioner—if it have not that effect the law will not adjudge it a forfeiture. It must, therefore, be by *feoffment* and livery, for *this only* operates upon the possession, and effects a disseizin. It cannot be by a grant or any *other* conveyance in the nature of a grant, such as lease and release, or bargain and sale—conveyances of this kind operating only on the grantor's interest, and passing *only* what he may lawfully part with. 5 Bac. Abr. 668. Title, Lease and Form for years. Co. Litt. 251, 6. 1 Blk. Com. 274, n. 1 Chitty's Genl. Prac, 243, 4, 287, 1 Bouvier's Law Dict. 602, and cases cited. 2 Blk. Com. 120, n.

The reason for the distinction as to the effect of the different modes of conveyance, is this: "A feoffment may be a *tortious* conveyance creating a fee, even though made by the owner of a particular estate, and therefore incurring a forfeiture; but a lease and release form; but an innocent conveyance, which transfers only such an interest as the party conveying has, and therefore may be used without forfeiting his estate." 1 Chitty Gen. Prac. 327.

In McKee *v.* Pfouts, 3 Dall 486, it was held by the supreme court of this State, and recognized as the law in numerous cases, that a conveyance by bargain and sale, acknowledged and recorded, of an estate in *fee simple* by tenant by the courtesy, was not a forfeiture of his estate, the reason being that a deed of bargain and sale operates by way of use, and conveys no greater estate than the bargain or sale may lawfully convey; *therefore it never was considered as inducing a forfeiture on common law principles.* Dunwoodie *v.* Reed, 3 S. & R. 445-454. 4 Kent Com. 85, 454.

If a *deed*, the ordinary mode of conveyance, cannot work a forfeiture, surely a mere *agreement* to convey which may or may not be carried out, will not have that effect.

It is contended lastly by the counsel for the plaintiff, that the term is forfeited by reason of *waste* committed by the tenant upon the demised premises, by opening mines thereon—by mining and selling annually large quantities of coal, and by opening and working, for the purpose of sale, stone quarries for a number of years before the commencement of this suit.

It is an important fact in the case that there were no opened mines or quarries on the premises at the date of the lease—that mining of coal

was first commenced by the tenant in 1810, and quarrying stone in 1855 or 1856.

These acts were to the prejudice of the reversioner, and were undoubtedly waste, operating as a forfeiture of the term, and entitling the lessor to recover the premises by ejectment, unless they were authorized by the lease, or the forfeiture was by some act of his. This brings us to the consideration of the most important and difficult part of the case, involving the proper construction of the lease, and a determination of the rights of the parties under it.

In the first or granting part of the indenture, the lessors say that *they* "have, and a majority of them *hath* granted, demised, set and to farm let, and by these presents do grant, demise, lease, set and to farm let, unto the said Joseph Fellows, his executors, administrators and assigns, all that certain tract of land" (describing these several lots or tracts). · Then follows this clause, "to have and to hold the above granted and demised premises with every privilege, right, member and appurtenances whatsoever to the same premises belonging, or in anywise appertaining, whether ways, waters, watercourses, *mines and minerals* of whatever description, to the said Joseph Fellows, his executors, administrators or *assigns*, for and during and until the full end and term of nine hundred and ninety-nine years, fully to be complete and ended.

It is the office of the *habendum* clause in a deed to determine what estate or interest is granted. It may lessen, enlarge, explain or qualify the estate granted in the premises. 2 Blk. Com. 298. Unless totally repugnant to the estate granted, the words of the habendum are to receive the same construction as if contained in the first part of the instrument. In Wager *v.* Wager, 1 S. & R. 375, it was said by Tilghman, C. J., that "one of the most important rules in the construction of deeds, is so to construe them that no part shall be rejected. The object of all construction is to ascertain the intent of the parties, and it must have been their intent to have some meaning in every part." This rule applied to the lease, relieves the mind from all doubt as to the meaning of the parties. When the lessors said that the lessee should have *every* privilege of mines and minerals, it was clearly their intention that he should reap *some* benefit and advantage from the exercise and enjoyment of that privilege. It never could have been contemplated that the tenant should forfeit all rights, if he made those expressly granted to him available. The *right* to the minerals being granted to him, he might dig for them. It is a well settled rule that when anything is granted, all the means to obtain it, and all the fruits and effects of it are granted also, and all shall pass inclusive together with the thing by the grant of the thing itself. Noyes' Maxims 198.

If there be a lease of land with the mines in it, and there be no open mines, the lessee may dig for mines, *otherwise the grant as to the mines will not take effect.* Sanders' case, 5 Rep. 12 a. b. 1 Inst. 54 b. Liford's

case, 11 Rep. 52. Co. Litt., 59 b. 1 W. Sound, 323 n. c. 10 Bac. Abr. 427. 1 Wash. Real Prop. 412.

The case of Whitfield *v.* Bewit, 2 Peere Wms. 240, is not in conflict with Sanders' case, nor with the general doctrine as stated above. *There* the grantor conveyed to *trustees* the fee simple of the lands, with all mines, &c., to his own use for life, remainder to A. for life, remainder to his first son in tail with other remainders stated, remainder to the grantor in fee. It was *held*, that being a tenant for life, A. could not commit waste by opening mines, and that the words, mines, trees, &c., were introduced that all should pass to the trustees, but as they were part of the inheritance, no one should have power over them but such as had an estate of inheritance limited to them.

The words used in conveying the fee to the trustees, were the mere usual and formal words to convey a fee, and there was nothing to indicate that the tenant for life was to hold the property dispunishable of waste. It is very evident it was not the design of the lord chancellor to overrule Sanders' case, but to distinguish the case under consideration from that. The one was a conveyance of the fee to trustees to support remainders for life and in fee, while the other was a lease of a present interest to the lessee in which the words used could have no operation or effect, unless the tenant was permitted to open and work the mines.

In a lease designed merely for agricultural purposes there is no occasion to say anything in regard to the mines or minerals, where there are no open mines, unless it is intended to grant some interest therein. When they *are* mentioned it must be considered that there was a *purpose* in doing so, and when that purpose is plainly and expressly declared to be a *privilege*, a benefit to be enjoyed by the lessee, the case of Whitfield *v.* Bewit is not authority against the exercise of the privilege granted.

The term "mineral" embraces everything not of the mere surface, which is used for agricultural purposes ; the granite of the mountains as well as metallic ores and fossils, are comprehended within it. Earl of Ross *v.* Wainman, 14 M. & W. 859. Brainbridge on mines, 1 note 1.

Having considered the case thus far upon the effect of the words of the lease, let us for a moment examine it in the light of the conduct of the parties.

It was said per Lord Hardwicke, in Attorney General *v.* Parker, 3 Atk. 576, "that there is no better way of construing ancient grants and deeds, than by usage." And the uniform course of modern authorities fully establishes the rule that an ancient grant is to be construed by evidence of the manner in which the thing granted has always been possessed and used ; for so the parties thereto must be supposed to have intended. Weld *v.* Hornby, 7 East 199. Rex *v.* Osborne. 4 East 327.

More than half a century before the bringing of this suit, the lessee and those claiming his title, mined coal upon the demised premises. More

than ten years before suit was brought, they made valuable improvements for the purpose of mining coal, and annually mined, since 1855, from 3,000 to 5,000 tons. During all this period the lessors were annually, or from time to time, receiving the stipulated rent, without, so far as appears in the case, a word of complaint either from the trustees or any inhabitant. It is true that it is not expressly stated that the trustees had notice of the opening of mines by the tenant, but after this great lapse of time and the notoriety which always attends the operations of mining coal, it may fairly be presumed and taken as *prima facia* evidence that not only the committee, but all the inhabitants of the township had full knowledge, as well of the acts of the tenant in mining, as of the large amount expended in the way of improvements for the purpose of mining. Under these facts, if it were even doubtful whether the words, "every privilege to the premises belonging, whether mines or minerals, &c.," were intended to give the right to dig for, mine and take away coal, the meaning of the parties is elucidated by the conduct which they have pursued. The right to mine coal as claimed by the lessee, has been exercised since 1810, and fully acquiesced in by the lessor, by the receipt of the rent down to the first day of January, 1865.

But I put the decision of the case upon higher ground than that of waiver of forfeiture, and *hold*, that upon the face of the lease there is granted the absolute right to take minerals from the land demised, and for that purpose to dig the soil and open mines. When a lease permits the opening of mines, it is not waste for the tenant to work them, even to exhaustion. Per Read, J., Kier *v.* Peterson, 5 Wright 361.

The conclusions at which I have arrived in this case may be summed up and briefly stated as follows :

1st. That Joseph W. Griffin, the plaintiff, at the commencement of this suit held the legal title to the land in question, by virtue of a deed from two of the trustees of the public land of the certified township of Providence.

2d. That the lease by the public committee of said township, made on the 8th day of September, 1796, to Joseph Fellows, for the term of nine hundred and ninety-nine years, for the rent of four pounds and four shillings annually, is a valid and binding instrument, and the conveyance of the legal title to the plaintiff was subject to all the rights of the defendants as assignees holding under that lease.

3d. That the articles of agreement entered into by Joseph Fellows, the present holder of the leasehold interest, to sell and convey in fee simple certain lots to Joseph J. Postens, W. B. Carling and others, did not operate as a forfeiture of the term. If he had conveyed by *deed*, the only effect would have been to convey the residue of the term of years, and therefore no injury to the reversioner.

4th. By the *terms* of the lease as well as by the construction given to it by the acts of the parties for more than fifty years before the plaintiff

acquired his title, the lessee and his assigns have the right to mine coal and quarry stone for the purpose of sale.

5th. Upon the whole case, the defendants holding as assignee of the original lessee, have the right of possession as against the plaintiff. Therefore, judgment for the defendants upon the case stated.

Note. This case was taken to the supreme court by writ of error, and affirmed on the opinion of the court below, March, 1873.